Builders Steel Company v. Commissioner.
Builders Steel Co. v. Commissioner
Docket No. 17796.
United States Tax Court
1951 Tax Ct. Memo LEXIS 243; 10 T.C.M. (CCH) 426; T.C.M. (RIA) 51132; May 7, 1951
John H. McEvers, Esq., 201 First National Bank Bldg., Kansas City 6, Mo., for the petitioner Frank M. Cavanaugh, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves deficiencies in excess profits taxes as follows: 1942
$18,465.44
1943
21,075.70
1944
20,868.80
Total
$60,409.94
The case is before us on remand from the United States Court of Appeals for the Eighth Circuit for a new trial. Builders Steel Co. v. Commissioner, 179 Fed. (2d) 377. The issue presented is whether the Commissioner erred in disallowing, under section 23(a) of the Internal Revenue Code, a portion of the compensation paid petitioner's officers for the years 1942 to 1944, inclusive. Findings of *244 Fact Petitioner, a Missouri corporation, was organized on September 23, 1927, by Karl W. Schmidt, Bernard C. Zwart, Herbert G. Herrmann, C. P. Schmidt, and Willa K. Schmidt. It is engaged in the business of fabricating, erecting, and selling structural steel and miscellaneous steel and iron products. It kept its books and filed its returns on the basis of the calendar year and upon an accrual method of accounting. Its returns for the taxable years were filed with the collector of internal revenue for the sixth district at Kansas City, Missouri. The stockholders of petitioner and the number of shares owned by each during various periods from September 10, 1927, to December 31, 1947, were as follows: SCHEDULE OF STOCKHOLDERS AND SHARES OWNED BY EACH From Sept. 10, 1927, to Dec. 31, 1947, Inclusive 9-10-27
3-19-28
4-26-32
1-2-37
3-31-37
1-3-38
to
to
to
to
to
to
3-18-28
4-25-32
1-1-37
3-30-37
1-2-38
10-28-46
Karl W. Schmidt
110
110
110
110
310
392 1/2
Herbert G. Herrmann
60
60
60
60
130
162 1/2
Bernard C. Zwart
60
60
60
60
130
162 1/2
John H. Collopy
1
30
37 1/2
C. P. Schmidt (father of
Karl W. Schmidt)
10
10
10
10
10
10
Willa K. Schmidt (sister of
Karl W. Schmidt)
10
10
10
10
10
10
E. G. Washburn
20
C. P. Schmidt or
Helena L. Schmidt
Totals
250
270
250
251
620
775
*245 10-29-46
12-12-46
to
to
12-11-46
12-31-47
Karl W. Schmidt
292 1/2
292 1/2
Herbert G. Herrmann
162 1/2
162 1/2
Bernard C. Zwart
162 1/2
162 1/2
John H. Collopy
137 1/2
137 1/2
C.P. Schmidt (father of
Karl W. Schmidt)
10
Willa K. Schmidt (sister of
Karl W. Schmidt
10
10
E. G. Washburn
C.P. Schmidt or
Helena L. Schmidt
10
Totals
775
775
From the time petitioner was organized in 1927 up to and including 1936, its officers were Karl W. Schmidt, president, Herbert G. Herrmann, vice president, and Bernard C. Zwart, secretary-treasurer. During the period 1937 through 1944, Bernard C. Zwart served as treasurer only and John H. Collopy served as secretary. The directors of petitioner, from 1927 through 1947, were C. P. Schmidt, Willa K. Schmidt, Karl W. Schmidt, Herbert G. Herrmann, and Bernard C. Zwart. Karl W. Schmidt was born in Kansas City, Missouri, in 1892. He attended the University of Illinois, from which he graduated in 1916 with a B.S. degree in structural engineering. He was then employed in turn by various steel fabricating companies, including the Kansas City Structural Steel Company at Kansas City, Missouri, and J. Goldberg *246 & Sons Structural Steel Company of Kansas City, Missouri. In the last named company which he was with from 1919 to 1927, he started as a chief draftsman in the engineering department and he was advanced until he became plant superintendent. The J. Goldberg & Sons Structural Steel Company, like the petitioner, fabricated structural steel and miscellaneous and ornamental iron work. In 1927 it went into bankruptcy. At that time Schmidt was drawing a salary of about $5,700 per year. Bernard C. Zwart was born December 30, 1886. He left high school in 1908 after three and one-half years' attendance. After leaving school he worked successively as an apprentice draftsman, architectural draftsman, straw boss with a general contractor, and estimator, before he finally joined the J. Goldberg & Sons Structural Steel Company as chief draftsman. Later he was transferred to its sales department. He was with this company from 1916 until 1927, when the firm went out of business. Herbert G. Herrmann was born July 13, 1895. He started to work after grade school with the Bucyrus Company at Evansville, Indiana. He was next employed by J. Goldberg & Sons until 1918, when he joined the Sheffield Steel *247 Company in Kansas City to do steel frame building. In 1920 he returned to J. Goldberg & Sons with whom he was advanced to shop superintendent. He was with them until the failure in 1927, when he was earning about $3,640 per year. John H. Collopy was born in 1902. He received a grade school and commercial college education. After graduation in 1919 he went to work with the J. I. Case Plow Works as assistant cashier. In about 1923, he left that position to work as timekeeper and cost accountant for J. Goldberg & Sons Structural Steel Company. He remained in that position until the failure in 1927, when he was earning about $1,820 a year. After a short stay with another corporation he joined petitioner in October 1927. When it became apparent that J. Goldberg & Sons would not reopen, Karl W. Schmidt, Bernard C. Zwart, and Herbert G. Herrmann decided to start a structural steel business of their own and, joining with Schmidt's relatives, organized the petitioner in September 1927. Of the $25,000 capital with which the company opened business, Karl W. Schmidt paid in $11,000, Herbert G. Herrmann and Bernard C. Zwart each paid in $6,000 and Karl W. Schmidt's father and sister each contributed *248 $1,000. Prior to the war petitioner fabricated and sold structural and ornamental steel. Its chief competitors generally confined themselves to one or the other of those lines. During the years in question, however, the business of the petitioner was confined to fabricating and selling structural steel for products related directly or indirectly to the war effort. Except for the period May through August 1942, when petitioner worked a double shift, it worked one shift from 8:00 a.m. until 5:00 p.m. The tonnage shipped by petitioner during the period 1939 through 1944, inclusive, was: 1939
1,839
1940
2,324
1941
3,861
1942
4,255
1943
* 3,560
1944
* 2,670
Karl W. Schmidt was petitioner's president, chief executive and chief engineer. In addition to his executive duties he spent considerable time helping his draftsmen complete architectural designs and checking their engineering features. He was also familiar with all the aspects of his firm's work and was able to substitute for the other officers in their absence. The highest salaried man under *249 Schmidt, A. W. Tomplin, head draftsman, received compensation of $6,080 in 1942, $6,445 in 1943, and $6,486 in 1944. Bernard C. Zwart was treasurer of petitioner and also was responsible for sales and labor relations. His sales work required him to make estimates and occasionally check on the erection of materials petitioner sold. During the years in question his chief difficulties were with respect to incomplete or erroneous sketches, substitutions for scarce materials, and the preparation of bids. Occasionally, when a contract came in unaccompanied by a proper priority he would have to obtain that priority. He also made contracts with the labor union in petitioner's plant and handled all applications to the War Labor Board for men. His highest paid assistant, R. L. Fossnight, was paid $4,880 in 1942, $4,891 in 1943, and $4,885 in 1944. Herbert G. Herrmann was vice president and in charge of plant production and shop personnel. Plant production consisted of the fabrication of steel from prints and orders. Herrmann's two highest paid assistants were foremen, W. A. Beasley and Dee Weist. Beasley was paid $3,223 in 1942, $3,889 in 1943, and $3,615 in 1944. Voist received $3,290 *250 in 1942, $3,957 in 1943, and $3,881 in 1944. John Collopy was secretary of petitioner and as such was entrusted with office management and accounting. R. J. Holmes, the highest paid man under Collopy, was paid $2,876 in 1942; $2,832 in 1943, and $2,980 in 1944, for acting as timekeeper and doing cost accounting work. The petitioner's officers worked long hours and frequently without vacations. During the years in question the usual working day was from 7:30 or 8:00 a.m. until 5:30 p.m., but they often worked until 9:00 or 10:00 p.m., as well as on Saturdays, part time Sundays, and occasionally on holidays. Petitioner's sales, net income, salaries, dividends, surplus, and capital from origin to 1947, inclusive, were as follows: Net Income
Salaries
Gross Sales
Before Deduct-
Paid to
Surplus
Total
Less Returns
ing Officers'
Officers
at End of
Capital
and
and Collopy's
and
Dividends
Each Year
and
Year
Allowances
Salaries
Collopy
Paid
Per Books
Surplus
1927 *
$ 11,730.89
$ 2,747.63
$ 1,875.00
$ 872.63
$25,000.00
1928
182,243.10
40,483.70
23,120.00
18,677.98
27,000.00
1929
256,574.01
64,548.24
37,500.00
45,002.89
27,000.00
1930
217,001.99
46,417.00
37,600.00
$ 2,700.00
52,575.98
27,000.00
1931
130,500.32
20,522.81
27,600.00
1,350.00
46,679.27
27,000.00
1932
51,971.49
1,459.70
14,550.00
35,500.73
25,000.00
1933
47,007.28
2,197.27
5,685.00
33,731.44
25,000.00
1934
143,964.80
13,155.27
10,850.00
37,954.48
25,000.00
1935
214,798.32
24,929.98
18,720.00
2,500.00
43,176.69
25,000.00
1936
374,045.11
64,365.36
40,000.00
25,000.00
43,446.00
25,000.00
1937
363,919.59
66,739.75
40,000.00
24,800.00
41,579.31
62,000.00
1938
236,593.04
28,784.23
33,000.00
36,718.38
77,500.00
1939
255,920.67
19,949.33
20,000.00
36,471.87
77,500.00
1940
279,514.46
40,133.65
33,000.00
42,055.65
77,500.00
1941
671,823.67
157,006.81
64,500.00
85,305.92
77,500.00
1942
671,610.36
173,504.35
74,000.00
7,750.00
106,870.10
77,500.00
1943
411,748.29
108,075.95
74,000.00
7,750.00
117,770.86
77,500.00
1944
439,875.66
130,243.81
74,000.00
7,750.00
132,472.95
77,500.00
1945
538,635.34
121,352.24
80,000.00
7,750.00
146,653.56
77,500.00
1946
758,794.56
202,845.34
80,000.00
46,500.00
176,317.67
77,500.00
1947
945,921.19
211,780.74
80,000.00
38,750.00
219,271.73
77,500.00
*251 The salaries and bonuses paid by petitioner to its officers during the years 1927 to 1947, inclusive, were: SCHEDULE OF OFFICERS' SALARIES AND BONUSES 1927 to 1947, Inclusive Schmidt
Herrmann
Zwart
(President)
(Vice President)
(Secretary-Treasurer)
Salary
Bonus
Salary
Bonus
Salary
Bonus
1927
$ 625.00
$ 625.00
$ 625.00
1928
7,483.11
5,200.00
7,937.15
1929
15,000.00
10,000.00
10,000.00
1930
15,000.00
10,000.00
10,000.00
1931
10,000.00
7,500.00
7,500.00
1932
4,050.00
4,050.00
4,050.00
1933
1,280.00
1,280.00
1,280.00
1934
2,600.00
2,600.00
2,600.00
1935
5,200.00
5,200.00
5,200.00
1936
15,000.00
10,000.00
10,000.00
(Treasurer)
1937
$15,000.00
$10,000.00
$10,000.00
1938
12,000.00
8,000.00
8,000.00
1939
5,000.00
5,000.00
5,000.00
1940
9,000.00
8,000.00
8,000.00
1941
13,000.00
$6,500.00
10,000.00
$5,000.00
10,000.00
$5,000.00
1942
17,500.00
6,500.00
12,500.00
5,000.00
12,500.00
5,000.00
1943
17,500.00
6,500.00
12,500.00
5,000.00
12,500.00
5,000.00
1944
17,500.00
6,500.00
12,500.00
5,000.00
12,500.00
5,000.00
1945
17,500.00
8,000.00
12,500.00
6,500.00
12,500.00
6,500.00
1946
17,500.00
8,000.00
12,500.00
6,500.00
12,500.00
6,500.00
1947
17,500.00
8,000.00
12,500.00
6,500.00
12,500.00
6,500.00
*252 Collopy
(Not an Officer)
Salary
Bonus
1927
1928
$ 1,875.00
1929
2,500.00
1930
2,600.00
1931
2,600.00
1932
2,400.00
1933
1,845.00
1934
3,050.00
1935
3,120.00
1936
5,000.00
(Secretary)
1937
$ 5,000.00
1938
5,000.00
1939
5,000.00
1940
8,000.00
1941
10,000.00
$5,000.00
1942
10,000.00
5,000.00
1943
10,000.00
5,000.00
1944
10,000.00
5,000.00
1945
10,000.00
6,500.00
1946
10,000.00
6,500.00
1947
10,000.00
6,500.00
In its returns for the years 1942 to 1944, inclusive, the petitioner claimed as deductions the amounts paid to each of its officers for salaries and bonuses, as shown above. The respondent determined that reasonable compensation for the services rendered by these officers in each of these years was $15,500 for Schmidt, $12,000 for Herrmann, $12,000 for Zwart, and $10,000 for Collopy, and disallowed as deductions the remainder of the amounts paid to these officers. Reasonable compensation for the services rendered to the petitioner by its officers for each of the years 1942, 1943, and 1944 was: Karl W. Schmidt
$17,500
Herbert G. Herrmann
12,500
Bernard C. Zwart
12,500
John H. Collopy
10,000
Total
$52,500
*253 Opinion LEMIRE, Judge: The only question for our determination is what was reasonable compensation for petitioner's officers for the years 1942, 1943, and 1944. Sec. 23 (a) (1) (A), I.R.C.
Petitioner is a closely held corporation in which the officer-directors [1] have the controlling financial interest. As such the compensation which they have voted and paid to themselves is subject to close scrutiny. L. Schepp Co., 25 B.T.A. 419. The burden of establishing the reasonableness of the salaries and other compensation is on the petitioner. Botany Worsted Mills v. United States, 278 U.S. 282. Over the history of the petitioner from September 1927 to 1944, inclusive, the compensation paid to its officers represented a very large proportion of the annual earnings. In only eight of seventeen years were any dividends paid. In 1943 and 1944 more than 50 per cent, and in 1942 only slightly less than 50 per cent, of net income was distributed as compensation to the officers. These salaries were more than double the 1940 salary, triple the 1939 figure and half again as great as the highest *254 officers' salary total ever paid by the petitioner. The minutes of the petitioner indicate that the compensation was more often measured by the ability to pay than by the services rendered. They contain such statements as "prospects for the coming year show that the Company is able to pay an increase of salary," or, "Business has been so slack this year and indications are that it will not be better for some time to come, therefore, K. W. Schmidt made motions that the salaries * * * be reduced." Generally, reasonable compensation is such amount as would ordinarily be paid for like services by like enterprises in like circumstances. Reg. 111, Sec. 29.23(a)-6. A comparison of petitioner with the largest and one of the most successful of its competitors, Kansas City Structural Steel Company, during the years in question shows the following results: Gross Sales
Net Income
Kansas City Struc-
Builders
Kansas City Struc-
Builders
Year
tural Steel Co.
Steel Co.
tural Steel Co.
Steel Co.
1942
$6,438,691
$671,610
$519,376
$173,504
1943
5,989,691
411,748
670,188
108,076
1944
6,933,630
439,876
842,546
130,244
Surplus
Kansas City Structural
Steel Co.
Builders Steel Co.
Dividends
Balance at
Balance at
Kansas City
Beginning
Beginning
Structural
Builders
Year
of Period
Increase
of Period
Increase
Steel Co.
Steel Co.
1942
$397,887
$152,327
$ 85,306
$21,564
$45,000
$7,750
1943
550,214
247,083
106,870
10,901
45,000
7,750
1944
797,297
71,136
117,771
14,702
45,000
7,750
*255 The Kansas City company paid its officers $41,925 in 1942 and $45,175 in each of the years 1943 and 1944, as contrasted with the $74,000 which petitioner paid its officers during each of these same years. Cf. Wagner & Son, Inc. v. Commissioner, 93 Fed. (2d) 816. The testimony of petitioner's witnesses indicates that its officers were men of ability who were devoted to the performance of their duties. And even though the large volume of business handled during the years in question was attributable mainly to unsolicited defense and war orders, rather than the efforts of its officers, these men were compelled to work longer hours than in prewar years. Cf. Roth Office Equipment Co. v. Gallagher, 172 Fed. (2d) 452. We find, on the evidence as a whole, that the salary payments of $17,500 to Karl W. Schmidt, $12,500 each to Herbert G. Herrmann and Bernard C. Zwart, and $10,000 to John H. Collopy were reasonable in amount. We further find that the total compensation of the officers to the extent of the bonuses of $6,500 to Karl W. Schmidt and $5,000 each to the remaining officers, which were voted at the end of the year after profits were determined, was *256 excessive and not reasonable allowance for compensation for personal services actually rendered, within the meaning of section 23, Internal Revenue Code. Decision will be entered under Rule 50. Footnotes
*. Including steel furnished by the Government in the amounts of 832 tons in 1943 and 234 tons in 1944.↩
*. From September to end of year.↩
1. Collopy was not a director but a shareholder.↩